IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
Northern Division

| | |
|---|---|
| ANDREA CLARK<br>11222 Gentle Rolling Drive<br>Marriottsville, MD 21104<br><br>     Plaintiff,<br><br>v.<br><br>TRANS UNION, LLC<br>555 W. Adams St<br>Chicago, IL 60661<br><br>   Serve:  CSC – Lawyers Incorporating Service<br>            Company<br>            7 St. Paul St, Suite 820<br>            Baltimore, MD 21202<br><br>EXPERIAN INFORMATION SOLUTIONS, INC.<br>505 City Pkwy West<br>Orange, CA 92668<br><br>   Serve:  The Corporation Trust, Inc.<br>            2405 York Rd, Suite 201<br>            Lutherville Timonium, MD 21093<br><br>EQUIFAX INFORMATION SERVICES, LLC<br>1550 Peachtree Street, NW<br>Atlanta, GA 30309<br><br>   Serve:  CSC – Lawyers Incorporating Service<br>            Company<br>            7 St. Paul St, Suite 820<br>            Baltimore, MD 21202<br><br>CONVERGENT OUTSOURCING, INC.<br>800 SW 39th Street<br>Renton, WA 98057<br><br>   Serve:  The Corporation Trust, Inc.<br>            2405 York Road, Suite 201<br>            Lutherville-Timonium, MD 21093<br><br>            Defendants. | Civil Action No. 1:21-cv-2420 |

## COMPLAINT

Plaintiff Andrea Clark, by counsel, files this Complaint against Defendants Trans Union, LLC ("TransUnion"); Experian Information Solutions, Inc. ("Experian"); Equifax Information Services, LLC ("Equifax"); and Convergent Outsourcing, Inc. ("Convergent") (collectively, "Defendants"). In support of her claims, Plaintiff alleges as follows:

## PRELIMINARY STATEMENT

1. This is an action for statutory, actual, and punitive damages; costs; and attorneys' fees brought pursuant to the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. §§ 1681-1681x.

2. TransUnion, Experian, and Equifax, the "Big Three" consumer reporting agencies, have a long history of consumer complaints and lawsuits alleging (and establishing) that they unreasonably mixed the credit files and information of one consumer with the credit reports of another. In this case, representative of numerous others, TransUnion, Experian, and Equifax combined or mixed Plaintiff's credit file with the file of a different person with a similar name, resulting in a collection account appearing in Plaintiff's credit report that belonged to someone else.

3. Accordingly, Plaintiff alleges claims against TransUnion, Experian, and Equifax for failing to reasonably ensure the maximum possible accuracy of Plaintiff's credit reports in violation of the FCRA, 15 U.S.C. §1681e(b). Plaintiff also alleges a claim against Equifax for failing to fulfill its reinvestigation duties in violation of the FCRA, 15 U.S.C. § 1681i.

4. Plaintiff also alleges claims against Convergent for failing to fully and properly investigate Plaintiff's disputes and to review all relevant information provided by the consumer reporting agencies in violation of the FCRA, 15 U.S.C. § 1681s-2(b)(1) and for attempting to

2

collect a debt from Plaintiff that she did not owe, in violation of the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. §1692e.

## JURISDICTION AND VENUE

5. This Court has jurisdiction pursuant to 28 U.S.C. § 1331, 15 U.S.C. § 168lp, and 15 U.S.C. § 1692k(d).

6. Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events giving rise to Plaintiff's claims occurred in this District as Plaintiff resides in this District.

## PARTIES

7. Plaintiff is a natural person residing in this District and Division and a consumer as defined by 15 U.S.C. § 1681a(c) and 15 U.S.C. § 1692a(3).

8. TransUnion is a foreign limited liability company authorized to do business in the State of Maryland through its registered offices in Baltimore, Maryland. TransUnion is a "consumer reporting agency" as defined by 15 U.S.C. § 1681a(f).

9. Experian is a foreign corporation authorized to do business in the State of Maryland through its registered offices in Lutherville Timonium, Maryland. Experian is a "consumer reporting agency" as defined by 15 U.S.C. § 1681a(f).

10. Equifax is a foreign limited liability company authorized to do business in the State of Maryland through its registered offices in Baltimore, Maryland. Equifax is a "consumer reporting agency" as defined by 15 U.S.C. § 1681a(f).

11. Convergent is a State of Washington corporation. It is a furnisher as governed by the FCRA and a "debt collector" as defined by 15 U.S.C. § 1692a(6).

**FACTS**

12. In October 2020, Plaintiff applied for a mortgage in the State of New York, where she had lived for 20 years prior to March 2020.

13. The mortgage broker preapproved Plaintiff for a mortgage and provided her with a preapproval letter.

14. Plaintiff, however, delayed her plans to return to New York given the ongoing COVID-19 pandemic and did not pursue a mortgage.

15. In June 2021, as life started to normalize (relatively, at least) Plaintiff decided to revisit her plan to move back to New York.

16. Plaintiff approached the same mortgage broker that had preapproved her for a mortgage just eight months earlier.

17. This time, however—despite no changes in Plaintiff's financial situation—the mortgage broker informed her that she had pending collections on her credit report.

18. The mortgage broker explained to Plaintiff that the collections would preclude her from acquiring a mortgage.

19. Plaintiff soon learned that Experian, Equifax, and TransUnion were reporting derogatory information that did not belong to her.

20. Experian, Equifax, and TransUnion were reporting that Plaintiff had a collection by Convergent, which was collecting a purported debt on behalf of Cox Communications in Nevada.

21. TransUnion also was reporting that Plaintiff had a collection by Clark County Collection Services, which was collecting a purported debt on behalf of NV Energy.

22. Plaintiff, of course, does not and has never lived in Nevada.

23. Experian, Equifax, and TransUnion, nonetheless, listed Plaintiff as having a Nevada address.

24. The Experian report further identified Plaintiff as "Aljandra Clark" even though Plaintiff does not and has never gone by that name, legally or otherwise.

25. Upon discovering the reporting of the Convergent and Clark County Collection Services collections, Plaintiff immediately disputed them with Convergent and Clark County Collection Services directly.

26. Convergent continued to associate the collection with her and sent her correspondence communicating the same.

27. Plaintiff then disputed the Convergent collection with Experian, TransUnion, and Equifax on June 23, 2021, indicating that the Convergent collection did not belong to her.

28. Also on June 23, 2021, Plaintiff disputed the Clark County Collection Services collection with TransUnion, indicating that the Clark County Collection Services collection did not belong to her.

29. She further communicated to all three bureaus that she believed her identity had been stolen.

30. Upon information and belief, Experian, TransUnion, and Equifax forwarded notification of Plaintiff's dispute to Convergent.

31. Plaintiff also filed a police report with the Howard County, Maryland Police Department, indicating the same.

32. Following Plaintiff's disputes, Experian and TransUnion continued to report her as owing the Convergent collection.

33. TransUnion, however, deleted its reporting of the Clark County Collection Services collection.

34. Neither Experian nor TransUnion conducted an adequate investigation into Plaintiff's dispute as to the Convergent collection. If they had, they would have learned that the information on the Convergent account did not match Plaintiff's information.

35. Equifax ignored her dispute and, upon information and belief, continued to report the Convergent collection.

36. On July 20, 2021, Plaintiff sent follow-up disputes to each bureau, this time including information regarding the police report, the incorrect Nevada address, and her history of living in only New York and Maryland.

37. Upon information and belief, Experian, TransUnion, and Equifax forwarded notification of Plaintiff's second dispute to Convergent.

38. Following her second wave of disputes, Experian deleted its reporting of the Convergent collection.

39. Neither TransUnion nor Equifax responded to Plaintiff's second dispute.

40. On or about September 7, 2021, Plaintiff again disputed the Convergent collection with Convergent directly.

41. The Convergent and Clark County Collection Service collections were the only derogatory accounts reporting within Plaintiff's credit files when she applied for a mortgage.

42. As a result of Defendants' conduct, Plaintiff has suffered significant actual damages, including a decreased credit score and credit denials, which precluded her from moving to New York, her home state, during the pandemic. This ordeal has also caused her to suffer emotional distress, including stress.

43. At all times pertinent to this Complaint, Convergent's processing of consumer disputes was willful and carried out in reckless disregard for Plaintiff's rights as set forth under the FCRA. By example only and without limitation, Convergent's conduct was willful because it was intentionally accomplished through intended procedures and because Convergent believes that its efficiency in processing disputes is more important than making sure that the disputes are investigated thoroughly and accurately.

### *TransUnion's Lax Standard and Willful Misconduct*

44. TransUnion has substantial notice and knowledge of the "mixed file" problems and failures of its business procedures and systems.

45. As early as 1992, the Attorneys General of eighteen states were forced to file a lawsuit against TransUnion because of its conduct in connection with mixing consumer credit files. The lawsuit resulted in an Agreement of Assurances between the attorneys general relating to TransUnion's responsibilities to prevent mixed files.

46. TransUnion knows that their computer system causes one individual's credit report to be confused with another individual's credit report causing a "mixed file."

47. TransUnion acknowledges that its computer system causes credit reporting errors. TransUnion explains that some errors are caused by "*confusion between consumers with similar personal information*."[1]

48. TransUnion has been sued repeatedly for failing to prevent mixed consumer files, including *Philbin v. Trans Union Corp.*, 101 F.3d 957 (3d Cir. 1996); *Guimond v. Trans Union Credit Information Co.*, 45 F.3d 1329 (9th Cir. 1995); *O'Conner v. Trans Union Corp.,* No. 97-

---

1   https://www.transunion.com/blog/credit-advice/demystifying-data-maintaining-its-accuracy, last visited May 27, 2021.

7

4633, 1999 WL 773504 (E.D. Pa. Sept. 29, 1999); *see also Thomas v. Trans Union*, No. 00-1150 (D. Or. 2002) (jury verdict of $5.3 million remitted to $1.3 million); *Soghomonian v. Trans Union*, (E.D. Cal.) ($990,000 verdict); *Price v. Trans Union*, LLC, 737 F. Supp. 2d 281 (E.D. Pa. 2010); *Neclerio v. Trans Union*, LLC, No. 3:11cv1317 (D. Conn. Aug. 17, 2011).

49. Numerous cases alleging a mixed file and/or a failure to establish or to follow reasonable procedures to assure maximum possible accuracy in the preparation of the credit reports and credit files TransUnion publishes and maintains have also been brought in this District. *See e.g.*, *Bridgett v. Trans Union, LLC*, No. 1:16-cv-1112 (E.D. Va. 2016); *Lopez v. Trans Union, LLC,* No. 1:12-cv-902 (E.D. Va. 2012); *Chaudhary v. Trans Union, LLC,* No. 3:14-cv-123 (E.D. Va. 2014); *Kang v. Equifax Info. Servs., LLC*, 1:15-cv-01406 (E.D. Va. 2015); *Moulvi v. Equifax Info. Servs. LLC*, 1:15-cv-01073 (E.D. Va. 2015); *Barclay v. Trans Union, LLC*, No. 1:14-cv-01200 (E.D. Va. 2014).

50. TransUnion knowingly chooses to ignore these notices of its mixed file problems. It does so even though it already possesses a simple, easy, and inexpensive means to correct and avoid the problem.

51. Despite these lawsuits and multi-million-dollar verdicts, TransUnion has not significantly modified its procedures to assure that the credit reports that it prepares, publishes, and maintains are as accurate as possible, as required by the FCRA at 15 U.S.C. § 1681e(b).

52. Upon information and belief, TransUnion has not, and does not intend, to modify its procedures to comply with this section of the FCRA because compliance would drastically increase its operating expenses.

53. Accordingly, TransUnion's violation of 15 U.S.C. § 1681e(b) was willful and TransUnion is liable for punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n.

### *Experian's Double Standard and Willful Misconduct*

54. Experian also has substantial notice and knowledge of the "mixed file" problems and failures of its business procedures and systems.

55. As early as 1991, the Federal Trade Commission ("FTC") brought an enforcement action against Experian [formerly TRW, Inc.] in the United States District Court for the Northern District of Texas. *FTC v. TRW, Inc.*, 784 F. Supp. 361 (N.D. Texas 1991). In settling the enforcement action brought by the AGs, Experian agreed to make the following practice changes:

> 1. ***Maintain reasonable procedures to prevent the occurrence or reoccurrence of Mixed Files***,[2] including but not limited to:
>
> a. Continuing its current efforts to improve its information gathering, storing, and generating systems ***to reduce the occurrence of Mixed Files***, through modification of its software system to enable such system to accommodate and use, for matching and identification purposes, a Consumer's Full Identifying Information;[3] and
>
> b. Not later than July 31, 1992, implementing and utilizing changes to its system designed to prevent, to the extent it reasonably can, the reoccurrence of Mixed Files, once known;
>
> …
>
> iv. Employing reasonable procedures designed specifically ***to reinvestigate disputes from Consumers that result from Mixed Files***.
>
> …

---

[2] Mixed File is defined in the Consent Order as a Consumer Report in which some or all of the information pertains to Persons other than the Person who is the subject of that Consumer Report. *Id*. at 362.

[3] Full Identifying Information is defined in the Consent Order as full last and first name; middle initial; full street address; zip code; year of birth; any generational designation; and social security number. *Id*.

9

> For the five (5) year period following the entry of [the Consent Order], [Experian] shall measure, monitor, and test the extent to which changes in [Experian's] computer system, including its algorithms, reduce the incidence of Mixed Files.

*FTC*, 784 F. Supp., 362-364 (N.D. Texas 1991).

56. Similarly, another enforcement action was brought against Experian by nineteen state attorneys general that resulted in a similar consent order as described in the previous paragraphs, including the procedures related to the prevention of mixed files and procedures to reinvestigate disputes resulting from mixed files. *See TRW, Inc. v. Morales*, No. 3-91-1340-H (N.D. Tex. 1991).

57. Despite the consent orders with the FTC and the Attorneys General, Experian's computer system causes these mixes because it does not require or use full identifying information for a potential credit grantor's inquiry even when unique identifiers such as a full social security number are present. It does this in order to sell more credit reports.

58. Experian knows that their computer system causes one individual's credit report to be confused with another individual's credit report causing a "mixed file".

59. Experian has been sued repeatedly for failing to prevent mixed consumer files. *See, e.g., Calderon v. Experian Info. Solutions, Inc.*, 2012 U.S. Dist. LEXIS 89375 (D. Idaho 2012); *Howley v. Experian Information Solutions, Inc.*, No. 09-241 (D.N.J. filed January 16, 2009); *Ainsworth v. Experian Info. Solutions, Inc.*, 2011 U.S. Dist. LEXIS 63174 (C.D. Cal. 2011); *Novak v. Experian Info. Solutions, Inc.*, 782 F. Supp. 2d 617 (N.D. Ill. 2011); *Comeaux v. Experian Info. Solutions*, 2004 U.S. Dist. LEXIS 10705 (E.D. Tex. 2004); *Cartwright v. Experian*, et al., Case No. CV 09-427 (C.D. Cal. 2009); *Campbell v. Experian Info. Solutions, Inc.*, 2009 U.S. Dist. LEXIS 106045 (W.D. Mo. Nov. 13, 2009); *Jensen v. Experian Info. Solutions, Inc.*, 2001 U.S. Dist. LEXIS 15134 (E.D. Tex. Mar. 30, 2001).

60. Experian knowingly chooses to ignore these notices of its mixed file problems. It does so even though it already possesses a simple, easy and inexpensive means to correct and avoid the problem.

61. Despite these lawsuits, Experian has not significantly modified its procedures to assure that the credit reports that it prepares, publishes, and maintains are as accurate as possible, as required by the FCRA at 15 U.S.C. § 1681e(b).

62. Upon information and belief, Experian has not, and does not intend, to modify its procedures to comply with this section of the FCRA because compliance would drastically increase its operating expenses.

63. Accordingly, Experian's violation of 15 U.S.C. § 1681e(b) was willful and Experian is liable for punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n.

64. Compounding this mixed file problem, Experian does not conduct independent investigations in response to consumer disputes. Instead, it merely parrots the response of the furnisher despite numerous court decisions admonishing this practice. *See Cushman v. Trans Union Corp.*, 115 F.3d 220, 225 (3d Cir. 1997) ("The 'grave responsibilit[y]' imposed by § 1681i(a) must consist of something more than merely parroting information received from other sources. Therefore, a 'reinvestigation' that merely shifts the burden back to the consumer and the credit grantor cannot fulfill the obligations contemplated by the statute."); *Apodaca v. Discover Fin. Servs.*, 417 F. Supp. 2d 1220, 1230–31 (D. N.M. 2006) (noting that credit reporting agencies may not rely on automated procedures that make only superficial inquiries once the consumer has notified it that information is disputed); *Gorman v. Experian Info. Sols., Inc.*, 2008 WL 4934047, at *6 (S.D.N.Y. Nov. 19, 2008).

11

65. Upon information and belief and consistent with its standard policies and procedures, Experian automatically generated its "investigation" results once Convergent provided its response to Plaintiff's disputes, verifying the status of the account, and it did not take any additional actions to verify the accuracy of the information that Convergent provided.

66. Instead, Experian blindly accepted Convergent's version of the facts and continued to report the inaccurate, derogatory information on Plaintiff's credit reports.

67. Experian continues the practice of parroting the response from the furnisher despite numerous lawsuits alleging (and establishing) that it fails to conduct a reasonable investigation as required by the FCRA.

68. Experian does not intend to modify its dispute-processing procedures because doing so would drastically increase its operating expenses.

69. Therefore, at all times relevant to this Complaint, Experian's conduct was willful and carried out in reckless disregard for a consumer's rights under the FCRA. By example only and without limitation, its conduct was willful because it ran a risk of harm that was known, or so obvious it should have been known, because it failed implement any procedure to identify and correct these common errors prior to furnishing reports.

### *Equifax's Double Standard and Willful Misconduct*

70. Equifax has substantial notice and knowledge of the "mixed filed" problems and failures of its business procedures and systems.

71. As early as 1992, the Attorneys General of several states were forced to file lawsuits against Equifax, because of its conduct in connection with mixing consumer credit files. The lawsuit resulted in an Agreement of Assurances between the Attorney Generals relating to Equifax's responsibilities to prevent mixed files.

72. In addition, only three years after the Agreement of Assurances, the Federal Trade Commission ("FTC") brought another enforcement action due to Equifax's widespread violations of the FCRA, including the creation of mixed files and then furnishing them to users who did not have a permissible purpose to view the information of the consumer. *In the Matter of Equifax Credit Information Services, Inc.*, 12 F.T.C. 577 (Aug. 14, 1995). This enforcement action resulted in a consent order between Equifax and the FTC that sets forth certain procedures to prevent mixed files and to conduct reinvestigations as required by the FCRA.

73. Despite the consent orders with the FTC and the Attorneys General, Equifax's computer system cause these mixes because it does not require or use full identifying information for a potential credit grantor's inquiry even when unique identifiers such as a full social security number are present. Equifax does this in order to sell more credit reports.

74. Equifax has knowledge that its computer system causes one individual's credit report to be confused with another individual's credit report causing a "mixed file." On its website, Equifax recognizes that individuals with "common names", such as Plaintiff, may be more at risk.[4]

75. Despite its recognition of the mixed file problem, Equifax knowingly chooses to ignore these notices of its mixed file problems. It does so even though it already possesses a simple, easy, and inexpensive means to correct and avoid the problem.

76. Equifax and its competitors have been sued repeatedly for failing to prevent mixed consumer files. *See, e.g., Miller v. Equifax Info. Sers.*, LLC, No. 3:11-cv-1231 (D. Or. 2011) (jury verdict of $18.6 million); *Malverty v. Equifax Info. Servs. LLC*, No. 8:17-cv-1617 (M.D. Fl. 2017); *Philbin v. Trans Union Corp.*, 101 F.3d 957 (3d Cir. 1996); *Guimond v. Trans Union Credit*

---

[4] Equifax, *What is a mixed credit file?*, https://www.equifax.com/personal/help/what-is-a-mixed-credit-file/ (last visited Sept. 17, 2021).

*Information Co.*, 45 F.3d 1329 (9th Cir. 1995); *O'Conner v. Trans Union Corp.,* Civ. No. 97-4633, 1999 WL 773504 (E.D. Pa. Sept. 29, 1999); *see also Thomas v. Trans Union*, C.A. No. 00-1150 (D. Or. 2002) (jury verdict of $5.3 million remitted to $1.3 million); *Soghomonian v. Trans Union*, (E.D. Cal.) ($990,000 verdict); *Price v. Trans Union*, LLC, 737 F. Supp. 2d 281 (E.D. Pa. 2010); *Neclerio v. Trans Union*, LLC, Civ. No. 3:11-cv-1317 (D. Conn. Aug. 17, 2011); *Calderon v. Experian Info. Solutions, Inc.*, 2012 U.S. Dist. LEXIS 89375 (D. Idaho 2012); *Howley v. Experian Information Solutions, Inc.*, Civ. No. 09-241 (D.N.J. filed January 16, 2009); *Ainsworth v. Experian Info. Solutions, Inc.*, 2011 U.S. Dist. LEXIS 63174 (C.D. Cal. 2011); *Novak v. Experian Info. Solutions, Inc.*, 782 F. Supp. 2d 617 (N.D. Ill. 2011); *Comeaux v. Experian Info. Solutions*, 2004 U.S. Dist. LEXIS 10705 (E.D. Tex. 2004); *Cartwright v. Experian, et al.*, Civ. No. CV 09-427 (C.D. Cal. 2009); *Campbell v. Experian Info. Solutions, Inc.*, 2009 U.S. Dist. LEXIS 106045 (W.D. Mo. Nov. 13, 2009); *Jensen v. Experian Info. Solutions, Inc.*, 2001 U.S. Dist. LEXIS 15134 (E.D. Tex. Mar. 30, 2001); *Williams v. Equifax Info. Servs., LLC*, No. 48-2003-CA-9035-O (Orange County 2007).

77.     Numerous cases alleging a mixed file and/or a failure to establish or to follow reasonable procedures to assure maximum possible accuracy in the preparation of the credit reports and credit files it publishes and maintains have also been brought in this Circuit against Equifax. *See, e.g.*, *Mullins v. Equifax Information Services, LLC*, No. 3:05-cv-888, 2007 WL 2471080 (E.D. Va. August 27, 2007); *Sloane v. Equifax Info Servs.*, 510 F.3d 495 (4th Cir. 2007); *Robinson v. Equifax Info. Servs.,* 560 F.3d 235 (4th Cir. 2009); *Sloane v. Equifax Info Servs.*, 510 F.3d 495 (4th Cir. 2007); *Thach v. Equifax Info. Servs.*, No. 3:14-cv-0070 (E.D. Va. 2014); *Valdez-Estep v. Equifax Info. Servs.*, No. 1:13-cv-00007 (E.D. Va. 2016); *King v. Equifax Info. Servs.*, No. 1:15-cv-01406 (E.D. Va. 2015); *Moulvi v. Equifax Info. Servs.*, No. 1:15-cv-01073 (E.D. Va. 2015);

14

*Barclay v. Equifax Info. Servs.*, No. 1:15-cv-00691 (E.D. Va. 2015); *Robinson-Huntley v. Equifax Info. Servs.*, No. 1:15-cv-00626 (E.D. Va. 2015); *King, et al. v. Equifax Info. Servs., LLC.,* No. 3:17-cv-008 (E.D. Va. 2017); *Bridgett v. Trans Union, LLC, et al.,* No. 1:16-cv-1112 (E.D. Va. 2016); *Zhang v. Equifax Info. Servs.*, No. 2:19-cv-122 (E.D. Va. 2019); *Smith v. Equifax Info. Servs., LLC*, No. 7:20-cv-741 (W.D. Va. 2020).

78. Despite these lawsuits and related enforcement actions by Federal Trade Commission and Attorney Generals, Equifax has not significantly modified its procedures to assure that the credit reports it prepares, published and maintain as are accurate as possible.

79. Therefore, at all times relevant to this Complaint, Equifax's conduct was willful and carried out in reckless disregard for a consumer's rights under the FCRA. By example only and without limitation, its conduct was willful because it ran a risk of harm that was known, or so obvious it should have been known, by failing to implement any procedure to identify and correct these common errors prior to furnishing reports.

**COUNT ONE:**
**VIOLATION OF FCRA, 15 U.S.C. § 1681e(b)**
**(DEFENDANTS TRANSUNION, EXPERIAN, and EQUIFAX)**

80. Plaintiff incorporates by reference each of the allegations set forth in the preceding paragraphs.

81. TransUnion, Experian, and Equifax violated 15 U.S.C. § 1681e(b) by failing to establish and/or to follow reasonable procedures to assure maximum possible accuracy in the preparation of Plaintiff's credit reports and credit files they published and maintained.

82. Because of TransUnion's, Experian's, and Equifax's conduct, Plaintiff suffered actual damages, including without limitation: credit damage, damage to reputation, embarrassment, humiliation, and other emotional distress.

83. TransUnion's, Experian's, and Equifax's conduct in violating § 1681e(b) was willful, rendering them liable to Plaintiff for actual damages, statutory damages, punitive damages, costs, and attorney's fees in an amount to be determined pursuant to 15 U.S.C. § 1681n. In the alternative, they were negligent, which entitles Plaintiff to recovery under 15 U.S.C. § 1681o.

## COUNT TWO:
## VIOLATION OF FCRA, 15 U.S.C. § 1681i
## (DEFENDANTS TRANSUNION, EXPERIAN, and EQUIFAX)

84. Plaintiff incorporates by reference each of the allegations set forth in the preceding paragraphs.

85. TransUnion, Experian, and Equifax violated multiple sections of § 1681i, including but not limited to: (1) failing to conduct a reasonable reinvestigation to determine whether the disputed information was inaccurate in violation of § 1681i(a)(1); (2) failing to provide Convergent with all the relevant information regarding Plaintiff's disputes in violation of § 1681i(a)(2); (3) failing to review and consider all relevant information submitted by Plaintiff in violation of §1681i(a)(4); (4) failing to promptly delete the disputed inaccurate items of information from Plaintiff's credit file or modify the item of information upon a lawful reinvestigation of § 1681i(a)(5)(A).

86. Because of TransUnion's, Experian's, and Equifax's violations of §1681i, Plaintiff suffered actual damages, including but not limited to: loss of credit, damage to reputation, embarrassment, humiliation, and other emotional distress.

87. TransUnion's, Experian's, and Equifax's violations of § 1681i were willful, rendering it liable to Plaintiff for actual damages, statutory damages, punitive damages, costs, and attorney's fees in an amount to be determined pursuant to 15 U.S.C. § 1681n. In the alternative, it was negligent, entitling Plaintiff to recovery under 15 U.S.C. § 1681o.

**COUNT THREE:**
**VIOLATION OF FCRA, 15 U.S.C. § 1681s-2(b)(1)(A)**
**(DEFENDANT CONVERGENT)**

88. Plaintiff incorporates by reference each of the allegations set forth in the preceding paragraphs.

89. On one or more occasion within the past two years, by example only and without limitation, Convergent violated 15 U.S.C. § 1681s-2(b)(1)(A) by failing to fully and properly investigate Plaintiff's disputes.

90. When Plaintiff disputed the account with TransUnion, Experian, and Equifax, Convergent used a dispute system named, "e-Oscar," which has been adopted by the consumer reporting agencies and their furnisher-customers such as Convergent. E-Oscar is an automated system, and the procedures used by the credit reporting agencies are systemic and uniform.

91. When the credit bureaus receive consumer disputes, they (usually via an outsourced vendor) translate each dispute into an automated consumer dispute verification ("ACDV") form.

92. Upon information and belief, the ACDV form is the method by which Convergent has elected to receive consumer disputes pursuant to 15 U.S.C. § 1681i(a).

93. Upon information and belief, Plaintiff alleges that TransUnion, Experian, and Equifax forwarded Plaintiff's dispute via an ACDV to Convergent.

94. Convergent understood the nature of Plaintiff's disputes when it received the ACDV form.

95. Upon information and belief, when Convergent received the ACDV form containing Plaintiff's disputes, Convergent followed a standard and systemically unlawful process where it only reviews its own internal computer screen for the account and repeats back the same information to the ACDV system that was previously reported to the credit reporting agency.

96. Upon information and belief, when Convergent receives a consumer dispute through e-Oscar, it does not conduct a substantive review of any sort to determine whether the information already in its computer system is itself accurate.

97. Because of Convergent's violations of 15 U.S.C. § 1681s-2(b)(1)(A), Plaintiff suffered actual damages, including but not limited to: loss of credit, damage to reputation, embarrassment, humiliation, and other emotional distress.

98. Convergent's conduct in violating § 1681s-2(b)(1)(A) was willful, rendering it liable to Plaintiff for punitive damages in an amount to be determined pursuant to 15 U.S.C. § 1681n. In the alternative, Convergent was negligent, entitling Plaintiff to recover under 15 U.S.C. §1681o.

99. Plaintiff is entitled to recover actual damages, statutory damages, costs, and attorney's fees from Convergent in an amount to be determined pursuant to 15 U.S.C. §§ 1681n and 1681o.

## COUNT FOUR:
## VIOLATION OF FCRA, 15 U.S.C. § 1681s-2(b)(1)(B)
## (DEFENDANT CONVERGENT)

100. Plaintiff incorporates by reference each of the allegations set forth in the preceding paragraphs.

101. On one or more occasions within the past two years, by example only and without limitation, Convergent violated 15 U.S.C. § 1681s-2(b)(1)(B) by failing to review all relevant information provided by the credit bureaus.

102. As Plaintiff detailed in the previous Count, Convergent has elected to use the e-Oscar system for its FCRA disputes received through the consumer reporting agencies.

103. Convergent was aware of the meaning of the several dispute codes used by the consumer reporting agencies in e-Oscar.

104. Convergent does not contend that the ACDV system is an inadequate means to receive FCRA disputes through the consumer reporting agencies.

105. Convergent understood Plaintiff's disputes and that Plaintiff claimed the information was inaccurate.

106. Because of Convergent's violations of 15 U.S.C. § 1681s-2(b)(1)(B), Plaintiff suffered actual damages, including but not limited to: loss of credit, damage to reputation, embarrassment, humiliation, and other emotional distress.

107. Convergent's violations of 15 U.S.C. § 1681s-2(b)(1)(B) were willful, rendering it liable for punitive damages in an amount to be determined pursuant to 15 U.S.C. § 1681n. In the alternative, Convergent was negligent, entitling Plaintiff to recover under 15 U.S.C. § 1681o.

108. Plaintiff is entitled to recover actual damages, statutory damages, costs, and attorney's fees from Convergent in an amount to be determined by the Court pursuant to 15 U.S.C. §§ 1681n and 1681o.

## COUNT FIVE:
## VIOLATION OF FDCPA, 15 U.S.C. § 1692e
## (DEFENDANT CONVERGENT)

109. Plaintiff incorporates by reference each of the allegations set forth in the preceding paragraphs.

110. Convergent violated § 1692e of the FDCPA by using any false, deceptive, or misleading representation or means in connection with the collection of any debt including, but not limited to, attempting to collect a debt from Plaintiff that she did not owe.

111. Plaintiff suffered actual damages as a result of Convergent's violation of § 1692e, including embarrassment, humiliation, and other emotional distress.

112. Plaintiff is entitled to recover actual damages, statutory damages, her reasonable attorney's fees, and costs, pursuant to 15 U.S.C. § 1692k.

WHEREFORE, Plaintiff demands judgment for actual, statutory, and punitive damages against Defendants as pleaded above; her attorneys' fees and costs; prejudgment and post-judgment interest at the judgment rate; and such other relief the Court deems proper.

**TRIAL BY JURY IS DEMANDED.**

        Respectfully Submitted,

        **ANDREA CLARK**

        By: _/s/ Kristi C. Kelly_
        Kristi Cahoon Kelly, Bar No. 07244
        J. Patrick McNichol, Bar No. 19034
        KELLY GUZZO, PLC
        3925 Chain Bridge Road, Suite 202
        Fairfax, VA 22030
        Phone: 703-424-7572
        Fax: 703-591-0167
        Email: kkelly@kellyguzzo.com
                pat@kellyguzzo.com

        *Counsel for Plaintiff*